UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK N.A., a national association, et al.<br><br>Defendants. | Case No. 2:13-cv-1689-APG-NJK<br><br>**ORDER DENYING MOTION TO DISMISS, MOTION TO EXPUNGE LIS PENDENS AND MOTION FOR HEARING**<br><br>(Dkt. ##5, 6, 33, 35) |

  Plaintiff SFR Investments Pool 1, LLC ("SFR") purchased the property at issue in this case when the Mountain's Edge Homeowners Association ("HOA") foreclosed on its lien against the property. SFR contends that the foreclosure extinguished a first position deed of trust lien held by defendant Wells Fargo Bank N.A. ("Wells Fargo") because the HOA's lien enjoyed a "super priority" over Wells Fargo's deed of trust under NRS 116.3116(2). Wells Fargo has moved to dismiss SFR's Complaint, arguing that the statute creates only a payment priority for the HOA lien but does not upset the "first in time" lien priority afforded to its deed of trust. [Dkt. #5.] Because the plain language of the statute creates a super priority for the HOA's lien, not just for payment, the motion must be denied. For similar reasons, Wells Fargo's motion to expunge SFR's lis pendens [Dkt. #6] must be denied. Finally, Wells Fargo's rogue motion entitled "Request for Decision or Hearing" [Dkt. #33] is denied as improper.

**I. BACKGROUND**

  The facts as alleged in the Complaint are as follows:

  The real property that is the subject of this lawsuit (the "Property") is located in the Mountain's Edge community. In 2006, the HOA recorded Covenants, Conditions, and Restrictions ("CC&Rs") encumbering the Property. In January 2009, Defendant Victor A. Hunter

("Hunter") purchased the Property and executed a Note secured by a Deed of Trust ("DOT") in favor of KH Mortgage, LLC ("KH Mortgage"). That same day, KH Mortgage transferred all beneficial interest in the DOT to Wells Fargo, which recorded the Deed of Trust. Because of the prior recording of the CC&Rs, Wells Fargo had actual or constructive knowledge of the CC&Rs at the time it recorded the DOT.

In April 2012, the HOA recorded a Notice of Delinquent Assessment Lien against the Property. The assessments purportedly included common expenses due during the nine months immediately preceding recordation of the lien (the "super-priority assessments"). On June 2012, a Notice of Default and Election to Sell Under Homeowners Association Lien was recorded. Wells Fargo had actual or constructive notice of the HOA lien foreclosure proceedings, and that the amount of the lien included super-priority portion assessments. Wells Fargo failed to cure any amount of the lien.

The HOA foreclosed on its lien and SFR bought the Property at a foreclosure sale in April 2013. Thereafter, Wells Fargo began foreclosure proceedings against the Property based on its DOT. SFR sued for declaratory and injunctive relief, quiet title, and unjust enrichment, claiming that Wells Fargo's lien was extinguished by the HOA's prior foreclosure sale. Wells Fargo now moves to dismiss SFR's Complaint with prejudice, arguing that SFR's claim to priority is based on an improper reading of NRS Chapter 116.

## II.  DISCUSSION

### A. Motion to Dismiss

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, the court accepts the facts alleged in the complaint as true, and dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotations and citing references omitted).

Here, the legal dispute is whether an HOA lien foreclosure conducted under Nevada Revised Statutes Chapter 116 extinguishes all junior liens (including a first-position Deed of

Trust), or whether the statute creates merely a payment priority without changing the lien priority. SFR argues for the former interpretation while Wells Fargo insists the latter interpretation is correct.

The Nevada Supreme Court has not addressed the statutory provisions at issue here. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted). "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions."[1] *Id.* (quotation omitted).

The Court also looks to Nevada rules of statutory construction to determine the meaning of a Nevada statute. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). Under Nevada law, a court should construe a statute to give effect to the legislature's intent. *Richardson Constr., Inc. v. Clark Cnty. Sch. Dist.*, 156 P.3d 21, 23 (Nev. 2007). If the statute's plain language is unambiguous, that language controls. *Id.* If the statute's language is ambiguous, the Court "must examine the statute in the context of the entire statutory scheme, reason, and public policy to effect a construction that reflects the Legislature's intent." *Id.*

NRS Chapter 116, Nevada's version of the Uniform Common-Interest Ownership Act, sets forth the statutory framework for common interest communities such as HOAs. Nev. Rev. Stat. § 116.001; A.B. 221, Summary of Legislation, 66th Leg. (Nev. 1991). Section 116.3116(1) allows the HOA to record a lien "for any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due." Recording the HOA's declaration of CC&Rs "constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required." *Id.* at §

---

[1] The Court is particularly persuaded by the reasoning of the Honorable Jerome Tao, Eighth Judicial District Court of Clark County, Nevada, in *First 100, LLC v. Ronald Burns, et al.*, No. A677693 (8th Jud. D. Nev. Dept. XX, May 31, 2013), and by the Honorable Philip Pro, District of Nevada, in *7912 Limbwood Court Trust v. Wells Fargo Bank, N.A., et al.*, No. 2:13-cv-506-PMP-GWF (D. Nev. Oct. 28, 2013).

3

116.3116(5). Additionally, unless the HOA's CC&Rs provide otherwise, "any penalties, fees, charges, late charges, fines and interest charged pursuant to [§ 116.3102(1)(j)-(n)] are enforceable as assessments under this section." Nev. Rev. Stat. § 116.3116(1); *see also* § 116.3102(1)(j)-(n) (providing for charges for such items as late payment penalties, rental fees for common elements, and fines).

Section 116.3116(2) elevates the priority of the HOA lien over other liens. The HOA lien is prior to all other liens on the property *except*:

> (a) Liens and encumbrances recorded before the recordation of the declaration[2] and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;
>
> (b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent . . . ; and
>
> (c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

Thus, a first deed of trust has priority over an HOA lien under § 116.3116(2)(b). However, the last paragraph of § 116.3116(2) gives what is commonly referred to as "super priority" status to a portion of the HOA's lien, making that portion superior to the first deed of trust:

> The [HOA] lien *is also prior to all security interests described in paragraph (b) to the extent of* any charges incurred by the association on a unit pursuant to NRS 116.310312[3] and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the nine months immediately preceding institution of an action to enforce the lien, unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien. . . . This subsection does not affect the priority of mechanics' or materialmens' liens, or the priority of liens for other assessments made by the association.

*Id.* at § 116.3116(2) (emphasis added).

---

[2] The declaration is "any instrument[], however denominated, that create[s] a common-interest community, including any amendments to th[at] instrument[]." Nev. Rev. Stat. § 116.037.

[3] Allowing for the HOA's executive board to enter a unit to conduct maintenance or remove or abate a nuisance, and permitting the imposition of fees and costs for any such activity.

To recover unpaid assessments, the HOA may pursue a civil suit directly against the unit owner, or it may foreclose on its lien created under § 116.3116. *Id.* at §§ 116.3116(6), (10), 116.31162. Should the HOA choose to conduct a foreclosure sale to collect on its lien, the HOA must comply with certain notice requirements. First, the HOA must notify the owner of the delinquent assessments. *Id.* at § 116.31162(1)(a). If the owner does not pay within 30 days, the HOA must record a notice of default and election to sell. *Id.* at § 116.31162(1)(b). In addition to recording the notice of default, the HOA must mail the notice of default to: (1) a person of interest, i.e. "any person who has or claims any right, title or interest in, or lien or charge upon," who "has requested notice," (2) "[a]ny holder of a recorded security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest," and (3) "[a] purchaser of the unit," providing that the unit owner notified the HOA of the contract of sale 30 days prior to the recording of the notice of default. *Id.* at §§ 116.31163(1-3), 107.090(1). If the unit owner does not pay the lien amount within 90 days of the notice of default being recorded, the HOA then must give notice of the sale to the owner and to all known holders of a security interest who have "notified the association, before the mailing of the notice of sale, of the existence of the security interest." *Id.* at §§116.311635(b)(2), 116.31162(1)(c).

At the sale, the HOA may credit bid on the property "up to the amount of the unpaid assessments and any permitted costs, fees and expenses incident to the enforcement of its lien." *Id.* at § 116.31164(2). After the sale, the seller must execute and deliver to the buyer "a deed without warranty which conveys to the grantee all title of the unit's owner to the unit." *Id.* at §§ 116.31164(3)(a), 116.31166(3). The seller must apply the proceeds of the sale in the following order:

> (1) The reasonable expenses of sale;
>
> (2) The reasonable expenses of securing possession before sale, holding, maintaining, and preparing the unit for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, and, to the extent provided for by the declaration, reasonable attorney's fees and other legal expenses incurred by the association;

5

(3) Satisfaction of the association's lien;

(4) Satisfaction in the order of priority of any subordinate claim of record; and

(5) Remittance of any excess to the unit's owner.

*Id.* at § 116.31164(3)(c). "The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption." *Id.* at § 116.31166(3). A deed containing the proper recitals "is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons." *Id.* at § 116.31166(2).

Based on the unambiguous language of section 116.3116(2), the statute potentially separates the HOA's lien into two liens. The last paragraph of subsection 2 elevates to a super priority position the last nine months of unpaid assessments and any unpaid nuisance abatement costs. The remainder of the HOA's lien, including any charges not contained within the super priority portion of the lien, is relegated to a position junior to the first deed of trust. *Id.* at § 116.3116(2)(b). The parties generally agree the statute bifurcates the HOA lien into two separate liens, but they disagree whether the HOA's foreclosure on the super priority portion of the lien extinguishes all other liens. In other words, does NRS § 116.3116(2) create a lien priority or merely a payment priority?

Nevada's statutory scheme is clear. Section 116.3116(2) unambiguously provides that the HOA super priority lien is prior to the first deed of trust. The statute also unambiguously permits the HOA to use non-judicial foreclosure procedures to enforce its lien. The statute sets forth the order of priority by which the seller must distribute the foreclosure sale proceeds, and specifically provides that the association's lien must be satisfied before any other subordinate claim of record. The statute also provides that the purchaser at an HOA foreclosure sale obtains the unit owner's title without equity or right of redemption, and a deed which contains the proper recitals "is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons." *Id.* at § 116.31166(2). *Compare* Nev. Rev. Stat. § 107.080 (providing that a mortgage foreclosure sale "vests in the purchaser the title of the grantor and any successors in interest without equity or

6

right of redemption"); *Bryant v. Carson River Lumbering Co.*, 3 Nev. 313, 317-18 (1867) (providing that such a sale "without equity or right of redemption" vests in the purchaser "absolute legal title as complete, perfect and indefeasible as can exist or be acquired by purchase; and a sale, upon due notice to the mortgagor, whether at public or private sale, forecloses all equity of redemption as completely as a decree of court"). Consequently, a foreclosure sale on the HOA super priority lien extinguishes all junior interests, including the first deed of trust.

Wells Fargo's argument that Chapter 116 creates merely a payment priority and cannot extinguish a deed of trust is untenable. Even if these statutory provisions do not explicitly provide that foreclosure of the HOA super priority lien extinguishes the first deed of trust, § 116.1108 provides that general principles of law and equity "supplement the provisions of this chapter, except to the extent inconsistent with this chapter." Under well-settled foreclosure principles, the foreclosure of a superior lien extinguishes all junior security interests. *Aladdin Heating Corp. v. Trustees of Central States*, 563 P.2d 82, 86 (Nev. 1977); *Erickson Constr. Co. v. Nev. Nat'l Bank*, 513 P.2d 1236, 1238 (Nev. 1973). Junior lienholders wanting to avoid this result can preserve their security interests by buying out the senior lienholder's interest. *See Carrillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980).

This result is consistent with the Legislature's statutory purpose of the super priority lien to "ensure prompt and efficient enforcement of the association's lien for unpaid assessments." Uniform Common Interest Ownership Act § 3-116, cmt. 1 (1982); *see also* Nev. Rev. Stat. § 116.1109(2) ("This chapter must be applied and construed so as to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."). The Nevada Legislature presumably was aware of the normal operation of foreclosure law when it enacted Chapter 116 in 1991. If the Legislature intended a different rule to apply to an HOA foreclosure sale, it could have so indicated.

Wells Fargo urges the Court to disregard the decisions of courts holding that the statute creates a lien priority rather than a payment priority, including those decisions cited in footnote 1

7

above. Although Nevada state trial courts and decisions from this federal district court are divided on the question, guidance from other Nevada sources confirms the Court's conclusion about the meaning of this statutory scheme. The Nevada Real Estate Division of the Department of Business and Industry ("NRED") has interpreted this statute to mean that foreclosure on the HOA super priority lien results in extinguishment of all junior liens, including the first deed of trust. [Dkt. #1-4 at 101.] According to the NRED, the "ramifications of the super priority lien are significant in light of the fact that superior liens, when foreclosed, remove all junior liens. An association can foreclose its super priority lien and the first security interest holder will either pay the super priority lien amount or lose its security." [*Id.* at 109.] In its conclusion, the NRED stated that the "association can use the super priority lien to force the first security interest holder to pay that amount." [*Id.* at 119.] The HOA retains a junior lien for other charges and penalties; if the first lienholder pays off the super-priority lien amount, it may foreclose on its lien and extinguish the HOA's junior lien for items not afforded super-priority status under the statute. [*Id.*]

Wells Fargo urges the Court to disregard the advisory opinion of the NRED because it is subjective and non-binding. This argument has no merit. The NRED is the entity charged with interpreting Chapter 116. *State, Dep't of Bus. & Indus., Fin. Insts. Div. v. Nev. Ass'n Servs., Inc.*, 294 P.3d 1223, 1227-28 (Nev. 2012); *see also* Nev. Rev. Stat. §§ 116.043, 116.615, 116.623. The Nevada Supreme Court therefore would defer to the NRED's interpretation so long as that interpretation is within the statute's language. *Dutchess Bus. Servs., Inc. v. Nev. State Bd. of Pharmacy*, 191 P.3d 1159, 1165 (Nev. 2008); *Folio v. Briggs*, 656 P.2d 842, 844 (Nev. 1983) (the Nevada Supreme Court "attach[es] substantial weight" to the interpretation of a state agency "clothed with the power to construe the statutes under which it operates").

Wells Fargo makes several additional arguments of statutory interpretation to support its position that a HOA lien created under Chapter 116 acts only as a payment priority and cannot extinguish the first deed of trust. First, it asserts that any contrary interpretation renders § 116.3116(2)(b) meaningless, relying on *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*,

8

No. 2:13–CV–00164–RCJ–NJK, 2013 WL 2460452 (D. Nev. June 6, 2013). The *Bayview* decision reasoned that § 116.3116(2) contains three parts: (1) the rule, which provides that an HOA lien is prior to all other liens, (2) an exception, which provides that a first security interest recorded before the HOA assessment became delinquent is prior to the HOA lien, and (3) an exception-to-the-exception, which provides that a portion of the HOA lien (i.e. the super-priority portion assessment) is prior to the first security interest. *Id.* at *5. The Court disagrees with *Bayview* decision in part because it is based on the presumption that the HOA lien (the rule) will always include a super-priority portion assessment (the exception-to-the-exception) and therefore because the exception-to-the-exception includes all instances of the rule, allowing extinguishment of the first deed of trust (the exception) "reads the first mortgage rule out of the statutes" and renders the exception meaningless. *Id.* at *4-5. This presumption is overstated, in part because it is possible that the HOA lien will not include any super-priority assessment. Moreover, the HOA lien can and likely will include a portion of non-super priority assessment that would not supersede the first deed of trust under § 116.3116(2)(b). Regardless, the plain language of the statute expressly gives the super-priority assessment portion priority over the first deed of trust.

Second, Wells Fargo argues that SFR could purchase only Hunter's possessory interest, and therefore SFR never purchased fee simple title. This argument is belied by the plain language of the statute and well-settled Nevada law. The plain language of § 116.31166(3) provides that the sale "vests in the purchaser the title of the unit's owner without equity or right of redemption," which means the purchaser obtains "absolute legal title as complete, perfect and indefeasible as can exist or be acquired by purchase." *Bryant*, 3 Nev. at 317-18. Accordingly, the Court rejects this argument.

Third, Wells Fargo argues that the statute denies it due process because it does not require that adequate notice of the lien and sale be provided. On a motion to dismiss, the Court must accept as true the allegations in the Complaint, including those alleging that Wells Fargo received actual or constructive notice of the foreclosure proceedings and the super-priority portion of the HOA lien. [Dkt. #1-2 at ¶¶ 17, 19.] Thus, at this stage, the argument lacks merit. Wells Fargo

may reassert this argument (and support it with appropriate evidence and affidavits) in a Motion for Summary Judgment, if there are no genuine issues of material fact about the notice (if any) that Wells Fargo received, the quality and consequences of such notice, and related issues.

Finally, Wells Fargo argues that the Court's interpretation of the statute leads to unreasonable results because an HOA lien of relatively little value should not be able to extinguish a first deed of trust of considerable value. The plain and unambiguous statutory language (not the relative monetary values of the respective liens) controls. Moreover, this interpretation of the statute is neither novel nor unfair. Wells Fargo easily could have avoided this purportedly inequitable consequence by paying off the HOA super priority lien amount to preserve its priority position, thereby avoiding extinguishment of its lien. Alternatively, Wells Fargo could have required an escrow for HOA assessments so that in the event of default, Wells Fargo could have satisfied the super priority lien amount without having to expend any of its own funds. *See* Uniform Common Interest Ownership Act § 3-116, cmt. 1 (1982); *see also* NRS § 116.3116(3). The HOA lien foreclosure extinguished only Wells Fargo's security interest in the property, not the underlying debt. *Olson v. Iacometti*, 533 P.2d 1360, 1363 (Nev. 1975) ("Foreclosure of the first trust deed extinguished only the security for the . . . note, not the indebtedness represented by that note."). Wells Fargo still can pursue Hunter for the unpaid balance. The Court's interpretation of the plain language of the statute does not create the inequitable result of which Wells Fargo complains.

### B. Motion to Expunge *Lis Pendens*

Wells Fargo has moved to expunge SFR's *lis pendens*. However, SFR has adequately shown that this lawsuit affects title to the Property, that the lawsuit was not brought for an improper motive, that SFR has performed conditions precedent to the relief it seeks, that SFR would be injured if Wells Fargo were permitted to proceed with foreclosure proceedings before judgment is entered, and that SFR is likely to prevail in this action. NRS § 14.015. Accordingly, the motion to expunge is denied.

////

### C. Motion for Hearing or Decision

Wells Fargo's Request for Decision or Hearing [Dkt. #33] is denied as procedurally improper. In March 2013, Judge Gloria Navarro specifically instructed Wells Fargo and its counsel about the impropriety of this type of motion. *See Zizi v. Republic Mortgage, LLC, et al.*, No. 2:12-cv-18-GMN-PAL, Dkt. # 48, at 10-11. As Judge Navarro succinctly stated:

> After filing their initial Motion to Dismiss, Defendants filed two other Motions Requesting Hearing or Decision on the initial motion. The Motions do not require any response, meaning they are improperly submitted as "Motions." . . . Thus, the "Motions" are inappropriate as their filing appears to be intended only to serve as "reminders" motivated by the Defendants' impatience in waiting for a decision.
>
> The Court reminds counsel that a motion requesting the Court to do what it is already required to do under the pretense of judicial economy is impertinent and exacerbates an already overcrowded docket. . . . Therefore, defense counsel should not file unnecessary and inappropriate repetitive motions that waste already overburdened judicial resources, as it is only adding to the problem, not assisting it. The Court refers counsel to Local Rule 7-6, which outlines the proper mechanism by which counsel may bring pending matters to the Court's attention to verify that the pending motion has not been miscategorized or otherwise "fallen through the cracks."

*Id.*

Despite this clear admonition, less than eight months later Wells Fargo and its counsel again filed a similar motion in this case.[4] This type of behavior is unacceptable. Failure to abide by the Local Rules of Practice—and specific instructions of judges in this District—is sanctionable behavior. The Court is deeply concerned that Wells Fargo and its counsel filed this frivolous motion after being specifically instructed that it is procedurally improper. Should Wells Fargo or its counsel continue filing such motions, the Court will impose sanctions.

### III.   CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is DENIED.

IT IS FURTHER ORDERED Defendant's Motion to Expunge Lis Pendens is DENIED.

////

////

---

[4] The Court also notes that Plaintiff's counsel imprudently joined in the improper request.

1      IT IS FURTHER ORDERED Defendant's Motion for Hearing or Decision is DENIED as procedurally improper.

     DATED THIS 10th day of March 2014.

*[signature]*

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE